## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

KATRICE WYNN,

               Plaintiff,

     -against-

HERITAGE HEALTH AND HOUSING, INC., and
NORMAN RODGERS, individually,

               Defendants.

**Case No. 18 CV 8670**

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMAND**

Plaintiff, Katrice Wynn, by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains against Defendants, jointly and severally, as follows:

### NATURE OF THE CLAIMS

1.    This action is brought to remedy, *inter alia*, the unlawful discrimination on the basis of sex/gender to which the Defendants subjected Plaintiff, with respect to the conditions and privileges of her employment, along with the hostile work environment, retaliation Plaintiff faced as a result of her opposition to these unlawful practices, and her wrongful termination at the hands of Defendants. Through their unlawful and discriminatory conduct, Defendants violated, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § § 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), New York State Human Rights Law, New York Executive Law,§ 290, et seq. ("the Executive Law"); the Administrative Code of the City of New York 8-107 et seq. ("NYCHRL"); New York

1

common law; and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

2.     Plaintiff seeks declaratory relief with respect to each Claim, as well as, monetary relief, including but not limited to: compensatory and punitive damages; attorney's fees and the costs associated with this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state laws.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction based on 28 U.S.C § 1331 and 1343 and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

4.     On or around June 22, 2018, the Equal Employment Opportunity Commission ("EEOC") mailed her Right to Sue Letter from the Charge of Discrimination Plaintiff filed with the New York State Division of Human Rights ("NYSDHR") on July 27, 2017.  Plaintiff received the same on June 25, 2018. Plaintiff's EEOC Charge Number is 520-2017-02210/16G-2017-03394.

5.     Plaintiff has satisfied all administrative prerequisites and is filing this action within ninety (90) days of receiving her Right to Sue Letter pursuant to 29 CFR § 1601.28.

6.     Venue is proper in this District based upon Defendants' residency and place of business within New York County, State of New York, within the Southern District of New York under 28 U.S.C. § 1391(b).

## PARTIES

7.     At all times relevant to this Complaint, Plaintiff was and still is an individual African American female residing in the City and State of New York, County of New York.

2

8.   At all times relevant to this Complaint, the Defendant, HERITAGE HEALTH AND HOUSING, INC. (hereinafter referred to as "Defendant HERITAGE") was and is a domestic not-for-profit corporation located in the State of New York, County of New York and with its headquarters located at 415 West 127th Street, New York, NY 10027.

9.   At times relevant to this Complaint, Defendant meets the definition of an "employer" under all applicable state and local statutes.

10.  At all times relevant to this Complaint, Defendant NORMAN RODGERS (hereinafter referred to as "Defendant RODGERS") was and is an individual male, who upon information and belief, resides in the State of New Jersey.

11.  At all times relevant to this Complaint, Defendant RODGERS was Defendant HERITAGE's employee with supervisory authority over Plaintiff WYNN.

## FACTUAL ALLEGATIONS

12.  Defendant HERITAGE provides supportive housing and healthcare services for low income individuals and families in Northern Manhattan, Queens and the Bronx.

13.  Around May 2016, Defendant HERITAGE hired Plaintiff WYNN to work on its Maintenance Crew.

14.  When receiving her employee identification, Plaintiff noticed that Defendant HERITAGE had provide her with a badge that identified her as working in Housekeeping.

15.  Another male employee named Jamerson who Defendant hired to work on the Maintenance Crew at approximately the same time as Plaintiff had also been given a housekeeping identification badge.

16.  Both Plaintiff and Jamerson went to HERITAGE's human resources department to informed them that Defendant had given them the wrong identification badges.

17.   HR changed Jamerson's badge to Maintenance; however, HR employee Jamela Irvin informed Plaintiff that there was no need to change her badge because workers in housekeeping and maintenance made the same hourly pay and, therefore, the classifying her as housekeeping rather than maintenance would not make a difference.

18.   Plaintiff was nonetheless bothered that HERITAGE changed the identification badge of the male employee to maintenance but refused to change hers even though she was hired to do and intended to do maintenance work.

19.   Accordingly, from May until November 2016, Plaintiff worked with the Maintenance Crew which consisted of five individuals – four males and Plaintiff, the only female.

20.   During this time, Plaintiff performed the full duties of a Maintenance Worker. These duties included performing repairs, renovations, changing lightbulbs, plumbing and electrical work, and painting interior walls. Plaintiff was also evaluated as a Maintenance Worker and signed her evaluation as a Maintenance Worker during this time.

21.   Plaintiff was an outstanding employee and qualified to do all of the aforementioned work.  She took tremendous pride in her Maintenance work and sought out and obtained extracurricular certificates in electrical, plumbing, asbestos handling, construction, OSHA Hazwoper worker, weatherization and green building design, and carpentry

22.   In or about November 2016, Defendant HERITAGE hired Defendant RODGERS as Director of Facilities.

23.   Upon Defendant RODGERS'S assumption of the role of Director of Facilities, Defendants began immediately discriminating against Plaintiff and subjecting her to a hostile work environment because of her female gender.

4

24.   Defendants RODGERS began removing Plaintiff from maintenance duties and assigning her to do more housekeeping duties. All the men on the Maintenance Crew continued to do maintenance duties, despite some or all of them also being assigned as housekeepers under HERITAGE's employee database.

25.   Around November or December of 2016, Defendant RODGERS told Plaintiff's coworkers to "MAKE IT HARD FOR HER."

26.   On or about June 24, 2017 Plaintiff's direct supervisor Omar Kraft informed Plaintiff that Defendant RODGERS repeatedly made sexist comments about women in general and about Plaintiff in particular.

27.   Specifically, amongst other comments, Defendant RODGERS had stated that "WOMEN SHOULDN'T BE DOING MAINTENANCE WORK."

28.    In reference to Plaintiff, Defendant RODGERS had repeated instructing Plaintiff's supervisors to "KEEP A BROOM AND MOP IN HER HAND AT ALL TIMES."

29.   Defendant RODGERS'S instructions concerning "KEEP A BROOM AND MOP IN HER HANDS AT ALL TIMES" applied only to Plaintiff, specifically because of her gender. RODGERS never instructed that the male Maintenance Workers have brooms or mops in their hands.

30.   RODGERS made sure these instructions were followed.  After HERITAGE hired him as Director of Facilities, Defendant HERITAGE deprived Plaintiff the opportunity to do Maintenance Work and Defendants HERITAGE and RODGERS forced her to  focus on cleaning, sweeping and mopping.

31.   Plaintiff repeatedly complained to HERITAGE about the discriminatory treatment but HERITAGE failed to take corrective action.  Rather, Defendants retaliated against her, singling her out for demotions and eventually a highly objectionable transfers.

32.   For example,  around February 2017, Defendant HERITAGE instructed the Maintenance Crew to assist an outside moving company move furniture from a worksite. The entire Maintenance Crew was concerned about this assignment given that moving furniture was not in their job description. The entire crew expressed their concerns to Defendant RODGERS.

33.   Shortly thereafter, Defendant RODGERS radioed the crew and stated, "TELL KATRICE TO GO HOME."

34.   Plaintiff asked Defendant RODGERS, "Why?"

35.   Defendant RODGERS told Plaintiff she was not on the insurance to drive the truck.

36.    This was not true. Plaintiff had submitted her license for processing to be registered under the insurance for the truck and had driven the company truck under a difference supervisor.

37.   Afraid Defendant RODGERS would claim that she had walked off the job, Plaintiff did not go home, but rather went to the street and waited by the company vehicle.

38.   The moving company never showed up, the Maintenance Crew was forced to move the entire worksite.

39.   Although the entire Maintenance Crew complained about being ordered to do work outside their scope of duties,  Defendant RODGERS singled out Plaintiff for  punishment for seeking clarification. The insurance coverage was a pretext for gender discrimination.

40.  The next day, Plaintiff complained to Defendant's Human Resources employee STACEY SIMMONS that she was being discriminated against.

41.  Defendant HERITAGE failed to address Plaintiff's complaint.

42.  Shortly thereafter, despite Plaintiff being in compliance with all work-related policies and having received no written or verbal warnings regarding insubordinate, inappropriate or unprofessional conduct, Defendant HERITAGE suspended Plaintiff for "insubordination".

43.  In reality, Defendant  suspended Plaintiff in retaliation for her complaints to STACEY SIMMONS about Defendant RODGERS'S discrimination.

44.  In or March 8, 2017, Defendants further demoted Plaintiff by removing her entirely from the Maintenance Crew and  stripping her of any and all maintenance responsibilities and transferring her the health clinic to perform housekeeping duties.

45.  Plaintiff's duties completely reduced to mopping floors, sweeping and dealing with the garbage. The demotion included receiving her assignments from a co-worker rather than a supervisor.

46.  The transfer and demotion  contributed to Plaintiff's discomfort, disillusionment and unhappiness in an increasingly hostile work environment because of her gender.

47.  While working at the clinic, Defendant HERITAGE's Information Technology Technician director Arthur Smith became Plaintiff's supervisor, although he did not give her assignments.

48.  Supervisor SMITH made sexist and degrading comments to Plaintiff, calling her a "crack head" as a derogatory racist sexist stereo type of Black woman being crack users.

49.   Plaintiff was the only member of the Maintenance Crew to be transferred to clinic.

50.   In further retaliation, in or around June 2017, Defendant  HERITAGE  re-assigned Plaintiff to a supportive housing building in the Bronx.

51.   HERITAGE employee Johnny Holmes served at the Bronx building's superintendent, who performed the maintenance duties for the building, leaving Plaintiff with housekeeping duties.

52.   In or around July 2017, Superintendent Johnny Holmes told Plaintiff that Defendant RODGERS explicitly instructed Johnny Holmes to "MAKE THE JOB HARD FOR HER."

53.   Plaintiff complained to HERITAGE that the reassignment was discriminatory and retaliatory, noting specifically that she did not feel safe working in isolation in the building, unlike when she worked on the Maintenance Crew where she always worked as part of a team.

54.   Defendant HERITAGE failed to address Plaintiff's complaints.

55.   Around early summer 2017, Defendant HERITAGE lost its contract for funding. In further retaliatory conduct and adding to an already hostile work environment, Defendant HERITAGE informed and encouraged all other employees by e-mail to apply to their new company. Defendant HERITAGE excluded Plaintiff from these e-mails.

56.   Further, when Plaintiff found out about the application process from other co-workers, she discovered that Defendant HERITAGE was denying her access to her work e-mail. HERITAGE only provided an email password after Plaintiff made several requests for a login password.

57.   Repeatedly Plaintiff complained to Defendant HERITAGE about the discrimination and unsafe working environment, but it failed to take corrective action and in fact retaliated against Plaintiff for lodging complaints.

58.   Finding her working situations unbearably discriminatory and unsafe,  Plaintiff had no choice but to resign her position in late June 2017.

59.   As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

60.   As a result of Defendants' harassment, discrimination, retaliation, unlawful termination, and all-around intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, depression, self-esteem issues, mood swings, and severe emotional distress.

61.   As a result of Defendants' unlawful discrimination and retaliation, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

62.   As a result of Defendants' harassing, discriminatory and intolerable treatment, Plaintiff suffered and continue to suffer severe emotional distress and physical ailments.

63.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, retirement and other compensation which such employment entails. Plaintiff also suffers future pecuniary losses, emotional pain, suffering and inconvenience, loss of enjoyment of life and other non-pecuniary losses.

64.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

65. Defendants conducted themselves with willful and wanton negligence and recklessness or in conscious disregard for the rights of Plaintiff and conduct so reckless as to amount to disregard, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

66.     The above facts are just some of the examples of the unlawful discrimination and retaliation Plaintiff experienced at the hands of Defendants.

67.     Defendants' conduct constitutes continuing violations.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e et. seq.,
(Against Defendant Heritage)**

68.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69.     Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703](a) Employer practices, It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individuals race, color, religion, sex or national origin;…

70.     Defendant HERITAGE engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by: (1) discriminating against Plaintiff on the basis of her sex; (2) allowing their employees to discriminate against Plaintiff on the basis of her sex; and (3) creating a hostile work environment that promoted discrimination against Plaintiff on the basis of her sex as alleged in paragraphs 12 – 58 above.

10

**AS A SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**42 U.S.C. § 2000e-3(a)**
**(RETALIATION)**
**(Against Defendant Heritage)**

71.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

72.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)

provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate

against any of [its] employees…because he has opposed any practice made an unlawful

employment practice by this subchapter, or because he has made a charge, testified, assisted or

participated in any manner in an investigation, proceeding or hearing under this subchapter."

73.     Defendants HERITAGE engaged in the unlawful employment practice prohibited

by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions

and privileges of her employment because of her opposition to the unlawful employment

practices of Defendants as alleged in paragraphs 31- 58 above.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**
**(Against Defendant Heritage)**

74.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

75.     New York State Executive Law § 296 provides:

It shall be an unlawful discriminatory practice: (a) For an employer, because of an

individual's race, creed, color, national origin, race,  creed, color, national origin, sexual

orientation, military status, sex, disability, predisposing genetic  characteristics,  marital

11

status,  or domestic violence victim status, predisposing genetic characteristics, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or, privileges of employment.

76.     Defendant HERITAGE engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296 by discriminating against the Plaintiff because of her sex as alleged in paragraphs 12- 58 above.

## AS A FOURTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW §296(1)(e)
### (Against Defendant Heritage)

77.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78.     New York State Executive Law §296(1)(e) provides that it shall be an unlawful discriminatory practice for any employer to discharge, expel or otherwise discriminate against any person because she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

79.     Defendant HERITAGE engaged in an unlawful discriminatory practice by harassing, disciplining, demoting and constructively discharging Plaintiff in retaliation for Plaintiff opposing Defendants' unlawful discriminatory practices as alleged herein, in violation of Executive Law § 296(1)(e) as set for in paragraphs 31- 58 above.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK EXECUTIVE LAW § 296 (7)**
**(RETALIATION)**
**(Against Defendant Rodgers)**

80.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

81.     New York State Executive Law § 296 (7) provides: "It shall be an unlawful

discriminatory practice for any person engaged in an activity to which this section applies to

retaliate or discriminate against any person because he has opposed any practices forbidden

under this article."

82.     Defendant RODGERS engaged in an unlawful discriminatory practice by

harassing and then terminating Plaintiff's employment in retaliation for Plaintiff opposing

Defendants' unlawful discriminatory practices as alleged herein, in violation of New York State

Executive Law § 296(7) as alleged in paragraphs 31- 58 above.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK EXECUTIVE LAW § 296(6)**
**(Against Defendants Heritage and Rodgers)**

83.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

84.     New York State Executive Law § 296(6) further provides: "It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of

the acts forbidden under this article, or attempt to do so."

85.     Defendants HERITAGE and RODGERS engaged in an unlawful discriminatory

practice by aiding and abetting unlawful discriminatory practices as alleged in paragraphs 12- 58

above.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE § 8-107
### (Against Defendants Heritage and Rodgers)

86.      Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

87.      The Administrative Code of the City of NY § 8-107 (1)(a) provides:

It shall be an unlawful discriminatory practice for an employer or an employee or agent

thereof, because of actual or perceived age, race, creed, color, national origin, gender,

disability, marital status, sexual orientation or alienage or citizenship status of any

person, to refuse to hire or employ or to bar or to discharge from employment such

person or to discriminate against such person in compensation or in terms, conditions or

privileges of employment.

88.      Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By

Employee, Agent or Independent Contractor provides:

An employer shall be liable for an unlawful discriminatory practice based upon the

conduct of an employee or agent which is in violation of any provision of this section

other than subdivisions one and two of this section only where: (1) the employee or agent

exercised managerial or supervisory responsibility; or (2) the employer knew of the

employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to

take immediate and appropriate corrective action; an employer shall be deemed to have

knowledge of an employee's or agent's discriminatory conduct where that conduct was

known by another employee or agent who exercised managerial or supervisory

responsibility; or (3) the employer should have known of the employee's or agent's

14

discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

89.     Defendants HERITAGE and RODGERS engaged in an unlawful discriminatory practice in violation of New York Administrative Code Title 8, § 8-107 (1)(a), by creating and maintaining discriminatory working conditions and a hostile work environment and otherwise discriminating against Plaintiff because of her gender as alleged in paragraphs 12 - 58.

90.     Defendants HERITAGE are additionally strictly liable for the discriminatory acts of Defendant Supervisor Rodgers under New York City Administrative Code Title 8, Section 8-107(13).

**AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE § 8-107(7)
(Retaliation)
(Against Defendants Heritage and Rodgers)**

91.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92.     The New York City Administrative Code Title 8, § 8-107(7) provides, in relevant part, that it shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter...

93.     Here, Defendant Director RODGERS retaliated against Plaintiff when she opposed his discriminatory conduct in violation of New York City Administrative Code Title 8, § 8-107(7) as alleged in paragraphs 31- 58 above.

94.     Further, Defendants HERITAGE retaliated against Plaintiff when she opposed Defendant Director RODGERS'S unlawful discrimination as allege paragraphs 31 – 58 above.

95.     Defendants HERITAGE are additionally strictly liable for the retaliatory actions of Defendant Director RODGERS under New York City Administrative Code Title 8, § 8-107(13).

## AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE § 8-107(6)
### (Against Defendants Heritage and Rodgers)

96.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97.     The New York City Administrative Code Title 8, § 8-107(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

98.     Defendants HERITAGE and RODGERS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct against Plaintiff as alleged in paragraphs 12- 58 above.

## INJURY AND DAMAGES

99.     As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer the loss of a career and the loss of a salary, overtime payments, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses. Plaintiff has also suffered severe emotional distress as a result of Defendants' unlawful conduct.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues to be tried.

## <u>PRAYER FOR RELIEF</u>

**WHEREAS,** Plaintiff prays for the following relief jointly and severally against all

Defendants:

a.   A declaration that Defendants violated Plaintiffs' federal, state and city civil rights

b.   Compensatory damages for injuries suffered by Plaintiffs by reason of Defendants'

   unlawful and unjust conduct, in an amount just and reasonable an in conformity with

   the evidence at trial in an amount to be determined at trial;

c.   Punitive damages against the Defendants to full the extent allowable by law;

d.   Damages for emotional distress, physical injury, lost wages, back pay, front pay,

   statutory damages, medical expense, interest and any other compensatory damages as

   permitted by law and according to proof at trial;

e.   Award of Plaintiffs' reasonable attorney's fees and costs under all applicable laws;

   and;

f.   Such other and further relief as appears just a proper.

Dated:   New York, New York
        September 21, 2018

                                    **DEREK SMITH LAW GROUP, PLLC**

                          By:   _____

                                Christina Giorgio, Esq.
                                One Penn Plaza, Suite 4905
                                New York, NY 10119
                                (212) 587-0760
                                *Attorneys for Plaintiff*